May it please the Court, I'm Terry Amdurham, the attorney for Robert Mercado, Jr. We were here some time ago with the same issue and were remanded back to the District Court in anticipation that the Supreme Court decision in Booker would clarify the question of whether to enhance the sentence. It does not appear that we have received any greater clarity after Booker, and so we're back again with the same issue. It's our position, as I've argued in the brief, that the use of acquitted conduct should not survive Blakely and Booker, and to do what Judge Carter did in this case violates the Sixth and the Fifth Amendment, and is also an unreasonable sentence when you look at the factors under 3553 under the now advisory Booker rationale. To impose a maximum sentence for the crimes for which Mr. Mercado was convicted contravenes the statutory factor set out in Section 18 U.S. Code 53A. Mr. Mercado had no prior criminal history. Counsel, do you have a position as to whether uncharged acts are able to be considered under the post-Booker scheme of things? Well, it doesn't appear that Booker has changed much in terms of the guidelines, and the guidelines say that uncharged conduct can still be used as relevant conduct. In theory, what is different about acquitted conduct and uncharged conduct? Because in the one case, you have a jury simply finding that the government hasn't carried its burden of proof, but the conduct is still out there. Why wouldn't that also be relevant conduct? The uncharged conduct? Well, why wouldn't acquitted conduct be theoretically similar in the sense that it's conduct that is not the subject of a conviction, but may be found by a sentencing judge to have occurred by a preponderance or by clear and convincing evidence? Well, I think that may be an issue in some cases, but as I've argued in this case, the use of special verdict forms and the absolute acquittal of my client on the underlying offense makes it to use that conduct to enhance the sentence not only a Sixth Amendment violation, but a Fifth Amendment violation. What do you mean by absolute acquittal as opposed to un-absolute acquittal? Well, I'm thinking of the Lynch case, the Ninth Circuit case in Lynch, which the government has cited in its brief. In Lynch, there was a Hobbs Act conviction, and during the trial, there was an allegation that Mr. Lynch murdered a gentleman by the name of Carriero. In the verdict form submitted to the jury, there was a special interrogatory submitted, and the jury was asked to determine whether Mr. Lynch had, in fact, murdered Mr. Carriero, and the jury did not conclude that. But the judge found that under the relevant conduct standard or preponderance of the evidence that Mr. Lynch had murdered Mr. Carriero and cross-referenced the first-degree murder guideline and sentenced him to the maximum sentence. And the panel in Lynch pointed out that Mr. Lynch affirmed the use of acquitted conduct in that case by pointing out that Mr. Lynch was not found innocent of Mr. Carriero's murder. There was merely a special interrogatory in which the jurors could not agree beyond a reasonable doubt that he had done it. In our case, Mr. Mercado was acquitted of all three murders. But what is the meaning of an acquittal? An acquittal is the jury's conclusion or finding that the government has not carried its burden beyond a reasonable doubt. Isn't that all an acquittal is? That may be, except in this case, we have special verdict forms and special findings by the jury on the counts. What difference does that make? Pardon? What difference does that make? I don't believe it's a general verdict anymore. I think it's a fact-specific verdict now. Well, make it a special verdict. The special verdict is that they didn't find beyond a reasonable doubt. Well, it clearly didn't find beyond a reasonable doubt, but they also – I mean, they didn't find beyond a reasonable doubt. But that's all it can mean. It can't – that's all their – their tasking is. Well, my – my position is the – the verdicts in this case are – take this case outside the original Watts general verdict, we can't determine what the jury meant. Well, I – I'm sorry. Go ahead. It seems to me that the crux of your argument is that the jury's verdict is somehow an affirmative finding that your client was innocent. But under the instructions given to a jury in this sort of situation, the only job they have is to answer yes or no to the question whether the government has proved its case beyond a reasonable doubt. And I think that's the struggle that I'm having with your argument. That is that an acquittal is not an affirmative finding of innocence, and so that's where I have difficulty understanding how that is – an acquittal of an act is different than not having charged it at all. Well, what the court is – is telling me essentially is what the Watts court said and the Supreme Court said in Watts. And my – our position is the – the argument that the Watts Ninth Circuit panel took, that I believe Judge Fletcher wrote, we believe that to use that conduct constitutes a violation of double jeopardy. Well, the Watts – the Watts decision of the Ninth Circuit didn't exactly stand up. No, I've agreed. It seems to me in Booker the Supreme Court said the real core point of Watts was that there shan't be any limitation placed on information concerning his background. There shan't be any placed on that at sentencing. And Watts – that's the basis of Watts. That is the basis of Watts. Well, that's the basis of Watts. Never mind that it was a double jeopardy case. The core of it is that finding – not finding beyond a reasonable doubt ain't the answer. If you're not in a – in a rigid guideline system, the other part of Booker, of course, said that's not the point if you're in a rigid guideline system, but we're talking about the outside. I think there's something troubling about spending six and a half months in trial in front of a jury and then asking the jury to make findings which resulted in virtually the exoneration of my client. Well, that's all the Ninth Circuit stuff that the Supreme Court in Watts said. Isn't that right? Well – I mean, we've got lots of cases and there's some – there's some emotional grab to that feeling. But the Supreme Court in Watts did say. Well, they did. And it's our position that Blakely – the rationale behind Blakely and Booker requires that that – that argument – that argument ought to be reexamined. As I was saying, the jury in this case basically said that he didn't do it. Judge Carter said, I find beyond a reasonable doubt that he did do it and I'm going to sentence him accordingly. That essentially is why we're here. Thank you. Our other counsel for – Mr. Stanford, is that right? May it please the Court, I am Elliot Stanford, attorney for Daniel Bravo. Both the Double Jeopardy Clause and the jury trial provision of the Fifth and Sixth Amendment have been violated here. The court in its theory at sentencing hit upon the object which the court found valid and thereby expanded the reach of the jury verdict by including in the object the idea that since this was a racketeering case, apparently despite the fact that there were major acquittals as to – there was an acquittal as to count one which included the violence and the murders. Despite the fact of that acquittal, apparently the trial judge was saying that in the total complex of the object of what was found guilty to the defendant and responsible in counts two and three, satisfied to open up the door. Suppose those hadn't been charged. Pardon me? Suppose those hadn't been charged at all, but at the sentencing on DeRico, evidence came in that satisfied the judge by preponderance or clear and convincing, whatever you like, that the murders had been committed. Is the Court referring to suppose that sentencing something occurred? I didn't quite get that. Yes. Yes. This is my response, Your Honor. It is clear – well, it is clear to me that 1B1.3 relevance and 1B1.2 subsection D relevance, which is an important doctrine for lawyers and judges and courts of appeal because it gives finite analysis to the decisions that are made. The relevance here by the court expanded to an acquitted count. The jury had its say as to count one. And yet the object was nevertheless retrieved by the judge, and he focused his sentencing of 20 years as opposed to the guidelines, which would have been about three, on the acquitted conduct. The object of which was denied despite his premise, denied by the jury in the least finding. That doesn't really quite answer my question, I don't think. Well, I'm sorry. I may not quite. Can you hear me? I didn't hear you quite clearly, yes. You can? No. Yes, I can now. Sorry. Okay. Sorry. Suppose certain crimes had not been actually charged under the RICO specifically. Yes. But at sentencing, it turns out that not only did he distribute 500 grams of, say, powder cocaine, but there's facts shown by preponderance of the evidence that as part of the conspiracy, 500 grams of crack cocaine were distributed also. Is it your position that the crack could not be considered? No, sir, Your Honor. But your position is that they had mentioned the crack in the indictment, and the jury found not guilty on that, then you could not consider it. Is that correct? No, Your Honor. My position is different. My position is that if, as I understand the court's premise, that if my point is in a drug case, if certain amounts of drugs were not included by the jury verdict, I don't know if this directly answers the question or not, but my view is that the case of Jackson, as I set forth, is an example of adding, for example, dilaudid to the count of conviction of the lady who objected to the court and our district adding additional dilaudid. My view is that that decision was correct, and other decisions such as it are correct, because this relevance has to play a part in our decisions, and additional drugs were used in Jackson to enhance the count of conviction in Jackson. I would like to mention that, yes. But if they also committed a murder as part of that conspiracy, you would say that can't be included. Is that right? That is correct, because that becomes – I understand. Yes. Sorry for not catching that immediately. I would like to draw the Court's attention to a primary decision the Court below used, and that is Watts, which has been mentioned before. Excuse me. The Court used Watts as its framework for escalating the sentence here to 20 years. In Watts, as an example of the relevance doctrine that I'm supporting, Watts was convicted of possessing cocaine, as we know, with intent to distribute it, but he was acquitted of a firearm in relation to a drug. It appears to me to be clearly relevant that in a drug stash where drug dealers are trying to protect themselves and the drugs, a firearm appears to be relevant. So the inclusion of a firearm to increase sentencing is perfectly relevant. What concerns me is the complete disregard under the Double Jeopardy Clause and the right to a jury trial, although what the jury says is not necessarily final in sentencing when there is relevant conduct, but the complete disregard of those two constitutional provisions on behalf of the Court by providing 20 years on the basis of going to the acquitted count. Counsel? Yes. You have a third co-counsel. Are you planning to leave her some time to speak? Yes, I'm just about done. But my point, my singular point here is that relevance was disregarded in this case, and the result was a violation of both the Double Jeopardy Clause and the jury trial. Thank you. Good morning, Your Honors. My name is Karen Bucher, and I represent Jimmy Sanchez. And this case is different from the other two cases. It does not involve acquitted conduct. This case was remanded for the district court to decide whether to impose Mr. Sanchez's federal life sentence consecutively or concurrently with his current life sentence. Mr. Sanchez argues that the district court misapplied the sentencing guidelines during the remand when it posed a consecutive sentence because it relied on impermissible factors. The first factor was, which was the overriding reason, was the district court attempted to fashion and achieve a reasonable incremental sentence. And it's true that recent and older versions of the guidelines directed the courts to fashion an incremental sentence, but the guidelines that govern this case, the 2000 edition, specifically omitted that language. What difference does that make? Shouldn't – wouldn't it be appropriate even if there's no guideline? Let's say there's no guideline in the world about it. Wouldn't that be an appropriate consideration for a judge? You know, what would be a reasonable incremental sentence for this guy? He's in for murder. I think it is. Another murder is committed that he's guilty of, I think. And the judge says, well, I should do something. There should be an incremental sentence, a reasonable sentence incrementally. Was that verboten before the guideline was amended, in your view? Normally, I would answer that, yes, it should have been considered. But what I find striking about this case is that the guidelines previously had the factor that the – That's what I said. Was it verboten before they put that in? But in 1995, it was deleted. There had to have been a reason for it to be deleted. I see. And when the language is deleted from the guidelines, there has to be a reason for it, and in my view, they're abandoning that approach. But then a few years later, in 2003, it reappeared back into the guidelines. So my argument is, in the year 2000, that was not a factor for the court to rely on. It was excluded. So, therefore, it was an impermissible factor to rely on. And also, the district court also relied heavily on the cost factor. The court was concerned that if he sentenced Mr. Sanchez concurrently, that the cost would shift from the State to the Federal Government, and whoever pays for the incarceration should not be a factor in deciding whether or not to pose a certain sentence. And another factor that the district court relied on was some of the co-defendants were misbehaving in prison, in the Federal prisons, and Mr. Sanchez should not be penalized for the conduct of other co-defendants. And it's our argument that the guidelines were misapplied, and we asked for a remand for resentencing. And additionally, the sentence was unreasonable, because now Section 3553A mandates that the district court needs to impose a sentence that's sufficient, but not greater than necessary, and two life terms served consecutively is greater than necessary to achieve the Congress goals. Congress goals are to deter the defendant from committing future crimes, and to impose to keep the community safe from him, but he's not going to be alive during his second term. So it's greater than necessary, and therefore it's unreasonable. Thank you, Counsel. We'll hear from the Governor. May it please the Court, Robert Dugdale on behalf of the United States of America. Since this is a consolidated appeal, Your Honors, I'm probably going to spend about three-quarters of my time talking about the Bravo-Marcado matter, and about a quarter of the time talking about the Sanchez matter. Regarding Bravo and Marcado, after a lengthy jury trial before Judge Carter, the defendants, Bravo and Marcado, were convicted of conspiring to engage in racketeering activities on behalf of the Mexican Mafia. At the time of sentencing, and it should be noted the sentencing in this case for both defendants lasted over a period of several days. This is not something that Judge Carter took lightly at all.  And he concluded that the objects of the conspiracy for which the defendants had been convicted included multiple murders, conspiracies to commit murder, extortion, drug trafficking, and an attempted murder. Now in their appeal, Defendant Bravo and Marcado complained that the use of acquitted, it was a mixture of the use of acquitted conduct, conduct for which the defendants had been convicted of, and uncharged conduct constituted a violation of the Sixth and Fifth Amendments, and specifically violated the Supreme Court's holding in Booker. And that is not the case. First of all, as far as the use of the acquitted conduct, it's clear as a result of the Supreme Court's decision in the United States v. Watts that a district court can rely upon acquitted conduct at sentencing, provided that that acquitted conduct is proven to the satisfaction of the court by a preponderance of the evidence, a standard, or maybe a higher standard if there's a disproportionate result. In this case, the judge determined that this conduct was proven beyond a reasonable doubt. What do we make of Justice Stevens' cabining of the Watts case to only double jeopardy, to say they didn't have any briefing on the Sixth Amendment and it really wasn't before them? Well, I think there's a couple things. First of all, clearly the Supreme Court had been inclined to do so in Booker, could have overruled Watts. In fact, one of the remedies that was proposed in the Booker decision was to have a jury serve essentially a sentencing jury where it would make every determination. It's basically what the defendants are advocating here, to make every determination allowable under the guidelines that would reach the ultimate sentence. And that, of course, was a remedy that was disregarded here and was not used by the Supreme Court. So Watts could have been overturned by the Supreme Court. It declined to do so. It was overturned, but the issue wasn't really before it exactly either, was it? Well, as far as the use of acquitted conduct, I guess it was in the sense that you couldn't possibly have a scheme where you could consider acquitted conduct if you followed that proposed remedy that was rejected by the Supreme Court, because you would have to have the sentencing jury determine all these factors. So in that sense, it was. And what Justice Stevens says is there's nothing inconsistent between the Watts decision and the Booker decision. And there have been a number, of course, seven by my count of every circuit that has considered this issue. I understand that, but how could it be made consistent with Booker under the Sixth Amendment? I mean, he could reconcile it in terms of double jeopardy, clearly, but he didn't make an attempt to justify it under the Sixth Amendment. But what Justice Stevens did do was rely upon almost the same language in Booker in the majority opinion as the Watts court relied upon in its decision. Specifically, what Justice Stevens recognized is that when a trial judge exercised its discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that result in that decision. So as long as you're within, under Apprendi, under Booker, under Blakely, as long as you're within the statutory maximum range that's authorized by the jury verdict, there is no violation of the Sixth Amendment. And declaring the guidelines advisory really gives the courts even more discretion than they ever had as far as sentencing decisions and more discretion to consider things like acquitted conduct. Subsequent to Apprendi, the court made it clear that it wasn't limited to statutory maximums, that they were looking at what the guidelines provided. Isn't that correct? That is correct. But again, they did determine that there was no Sixth Amendment problem with the guidelines as a result of their remedy of making them advisory. So rejected this idea that a jury has to determine beyond a reasonable doubt any factor that increases the defendant's sentence up to the statutory maximum. So again, this case is consistent with Booker, the way that Judge Carter handled it, consistent with the way that the seven other circuits who have decided this issue have determined that Booker did not overrule Watts. And again, it's the same underpinning in Watts as in Booker, the reliance upon 18 United States Code 3661 and 3553A as far as giving the judge an extremely wide breadth of discretion to determine what conduct he can consider at the time of sentencing and what information about the background of the defendant he should consider at the time of sentencing to impose an appropriate sentence. And so the Watts court and numerous decisions by this court, including post-Booker decisions, have recognized that a judge may, and in fact should be compelled to consider acquitted conduct at the time of sentencing to come up with a just sentence. But what the judge did here and seemed to think was necessary for him to do what he did was that although the jury had acquitted, he says, no, I find beyond a reasonable doubt that they did it. Now, what does that do to the role of the jury? Well, the jury played the role here of maxing out the potential sentence the defendants could face at 20 years as opposed to life had they found these other crimes that were convicted. So the jury did play a role here as far as the defendants were concerned in the sentence that they ultimately faced. But again, juries consider guilt or innocence. Well, they consider whether actually, as Judge Graber determined, whether the judges determined sentencing. And as a result, it's impossible to reconcile the defendant's position with Watts, essentially. And the other cases by this circuit in which this court has recognized that acquitted conduct is an appropriate thing for a court to consider at the time of sentencing. And again, Booker did not overrule Watts when he had the chance to do so. There have been seven circuit court decisions that have recognized the fact that Booker is consistent with Watts and did not overrule Watts. It's the same statutory language that both cases relied upon as their underpinning to reach their decision. And this court itself has recognized on two occasions subsequent to Booker that Watts is something that this court has relied upon, both in the Johnson decision of 2006 and the Lynch decision of this year as well. So as a result, there was no credible reason to believe that or no credible reason for this court to say that the Supreme Court's decision on Watts has somehow been overturned by its decision on Booker. That is something that was in the prerogative of the Supreme Court to decide, and so far they have not made such a decision. And again, you have to look at the underpinnings concerning the Watts decision too. The rationale that the district court should be given a lot of discretion at the time of sentencing to consider all these things, including acquitted conduct. The different stands of proof that are involved at sentencing as opposed to the jury determination. And the fact here that there's no double jeopardy issue because the defendants are being punished not for their acquitted conduct, but in the manner in which they committed the charge or the count for which they were convicted. Unless the court has any questions concerning the Bravo-Marcado issue, I'd briefly like to touch upon the Sanchez issue. Sanchez was also remanded by this court following the Fernandez decision. The original decision by this court was that the district court improperly determined that it did not have the discretion to run the life sentence that defendant Sanchez was facing in the state court concurrently with the life sentence that he was facing in federal court. So that was the only issue, and it was remanded to the district court in order to make that determination. The district court clearly said on the record that it recognized it had the And considered all of the appropriate factors in making its decision that it should run those sentences consecutively. And really at the end of the day, when you think about the logistics of this, this is really just a symbolic gesture, if anything, by the court. Mr. Sanchez is going to serve the rest of his life in custody regardless of whether Judge Carter ran these decisions or ran these sentences concurrently or consecutively. It really, as far as the practical effect it's going to have, it's going to have zero practical effect. But what Judge Carter did was recognize it had the discretion to run them concurrently and chose to run them consecutively. He explained in detail in another lengthy sentencing hearing, again, or multiple days over which this occurred, why he was running the sentence consecutively. And these were all appropriate reasons under both 18 U.S.C. section 3553A and the sentencing guidelines, section 5G1.3. Judge Carter looked at the long-term relationship Defendant Sanchez has had with the Mexican Mafia. He looked at his lengthy and substantial criminal history, which dates back to 1979 and features now ten criminal convictions, including multiple convictions for murder and attempted murder. He looked at the fact the defendant has twice been convicted prior to the instant case of engaging in criminal activity while in custody. He looked at the fact he had 22 criminal history points when you only need 13 to reach the highest level of the sentencing guidelines. He looked at the fact the defendant, Mr. Sanchez, was willing to approve and offer to commit murders. He looked at the fact that Defendant Sanchez involved his wife in criminal behavior. He looked at the complete lack of evidence of any chance of rehabilitation by Mr. Sanchez. He looked at the goals of specific and general deterrence. He looked at the effect that his sentence would have on the State's sentence. Basically, he looked at everything that was proper under the sun in order to make this determination. The three things that the defense points to that they say was improper are either not factors that the court relied upon to make its determination or, in fact, were proper factors. First of all, this idea that the court relied upon the cost of incarceration and who would pay was something that the court explicitly said in the record that it was not relying upon to reach its decision. This discussion about the cost only came up because the defense believed that if the defendant received a concurrent sentence, he would be allowed to serve that sentence in federal custody, which wasn't correct to begin with. So that's why we had this discussion concerning the cost, but the court explicitly said that it was not considering cost at the time that it imposed the sentence that it did and decided to run Defendant Sanchez's life sentences consecutively rather than concurrently. I have just a factual question. Sure. By consent, could he be sent to federal prison to serve the sentence? He could. There's nothing that would preclude that if the state said we're so overcrowded. Correct. There would have to be a determination by both the state would have to relinquish them because the state had primary jurisdiction over him because they had him first and the federal government would have to agree to take them. That's why the cost issue came up because there's not a lot of times the federal government is saying give us some more, we'd like to spend some more money incarcerating somebody for the rest of his life. But that's the only reason this cost issue even came up was the erroneous suggestion by defense that if he received a concurrent sentence that he would be able to serve his time in a federal facility rather than a state facility. And that's also why the discussion concerning the code of benefits came up because then there was a discussion concerning, well, where would you serve your time if you were sent in federal custody? And Judge Carter said he would recommend either Marion, I believe, or the ADX Florence facility because they were the only two facilities in his mind that were equipped to handle a Mexican Mafia member of Mr. Sanchez's stature who had engaged in this type of criminal behavior in the past. So at that time, Judge Carter commented on the other people who were topos or members of the Mexican Mafia and where they were and why they were incarcerated where they were. But again, it's not anything that the court relied upon to consider whether the sentence should be run concurrently or consecutively. And then last, this idea that the court somehow improperly considered this reasonable incremental punishment, that's just not a valid argument. This court recognized in a case called the United States v. Kim that there was an appropriate argument at the time where the guidelines did not have this provision in it. And it certainly is something that the court, whether this was in the guidelines or not in the guidelines, something the court should have considered where the defendant essentially would be receiving a free ride as a result of his federal conviction under the statutory factors it was required to consider, such as under Section 3553A, the nature of the criminal activity the defendant engaged in and his background. So there's no valid argument to say that the court considered anything improperly and considered every factor appropriately that it should have to determine that the sentences should run consecutively in this case. So unless the panel has any questions, I will submit. I believe we don't. Thank you. Thank you. Defense counsel used up your time, but we'll restore two minutes if anyone would wish to have that rebuttal time. Your Honor, this is regarding the cost factor. The hearing, the sentencing hearing covered two days, and through those two days the cost factor was the entire theme or almost the entire theme of the proceedings. And at one point the district court said you're not getting out, so it really becomes to be one of cost, who gets to pay the bill and who is kidding who. And that's at ER 154. And when you read through both hearings, it's all through the proceedings that the district court found the cost factor a very important issue. And he did say at one point that he wasn't going to consider it during the proceedings, but if you look at it as a whole, it played a very important role. Thank you. Any? No. All right. Thank you. The case just argued is submitted. We appreciate the arguments of all counsel. They've been very helpful.
judges: B. Fletcher, Fernandez, Graber